UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| LONA D.,<br><br>    **Plaintiff**<br><br>v.<br><br>ANDREW M. SAUL,<br>*Commissioner of Social Security,*<br><br>    *Defendant* | )<br>)<br>)<br>)<br>)<br>)  No. 2:20-cv-00191-JAW<br>)<br>)<br>)<br>)<br>)<br>) |

**REPORT AND RECOMMENDED DECISION**[1]

This Social Security Disability (SSD) and Supplemental Security Income (SSI) appeal raises the question of whether the administrative law judge (ALJ) supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ erred in (i) denying her request to subpoena agency examining consultant Richard J. Parker, Ph.D., (ii) inadequately addressing whether her migraine headaches equaled Listing 11.02, Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), (iii) failing to assess limitations stemming from her migraine headaches and epilepsy, and (iv) exceeding her lay competence in interpreting medical evidence unseen by the agency nonexamining consultants whose opinions she credited, Thomas Knox, Ph.D., Brian Stahl, Ph.D., and Leigh Haskell, Ph.D., while improperly rejecting the opinions of treating neurologist David

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

Taplinger, M.D., and treating counselor Gary Labbe, LCPC-C. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 15) at 4-16. I find no reversible error and, accordingly, recommend that the court affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through March 31, 2020, Finding 1, Record at 14; that she had the severe impairments of epilepsy, migraine headaches, post-traumatic stress disorder (PTSD), depression, anxiety, and personality disorder, Finding 3, *id.*; that she did not have an impairment or combination of impairments that met or medically equaled in severity any of the Listings, Finding 4, *id.* at 15; that she had the residual functional capacity (RFC) to perform a full range of work at all exertional levels but could never climb ladders, ropes, or scaffolds, could frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, was unable to work around unprotected heights or dangerous moving equipment, was unable to drive commercial vehicles and needed to avoid working around fire, water, or electrical hazards, was able to understand to remember at least simple instructions and tasks but could not handle complex information, was able to work in two-hour blocks of time performing simple tasks over the course of a normal workday and workweek, was able to adapt to simple changes in a routine work setting, and could work with co-workers and supervisors but not with the public, Finding 5, *id.* at 17-18; that, considering her age (39 years old, defined as a younger individual, on her alleged disability onset date, October 5, 2016), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id.* at 25-26; and that she, therefore, had not been disabled from October 5, 2016, her alleged

onset date of disability, through the date of the decision, February 27, 2019, Finding 11, *id*. at 27. The Appeals Council declined to review the decision, *id*. at 1-4, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The statement of errors also implicates Step 3 of the sequential evaluation process, at which step a claimant bears the burden of proving that her impairment or combination of impairments meets or equals a listing. 20 C.F.R. §§ 404.1520(d), 416.920(d); *Dudley v. Sec'y of Health & Human Servs.*, 816 F.2d 792, 793 (1st Cir. 1987). To meet a listing, the claimant's impairment(s) must satisfy all criteria of that listing, including required objective medical findings. 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3). To equal a listing, the claimant's impairment(s) must

be "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a).

## I. Discussion

### A. Denial of Subpoena

Dr. Parker completed a psychological examination of the plaintiff on August 14, 2017, noting that she alleged disability due, in relevant part, to PTSD and depression. *See* Record at 663. He used "structured and unstructured interview techniques" and administered the Wechsler Adult Intelligence Scale-IV (WAIS-IV), on which the plaintiff obtained a full-scale IQ score of 74 and a general ability index score of 73. *Id*. at 663, 667. Dr. Parker described the plaintiff's effort on tasks administered as "questionable" and her WAIS-IV scores as "significantly different than how she had described her earlier years and . . . thought to be below potential." *Id*. He noted that she reported that she (i) first smoked marijuana at age 22 and first drank alcohol at age 16, (ii) had smoked marijuana and had a "couple of wine coolers" within the week prior to the evaluation, and (iii) had received Suboxone in the past for the treatment of opiate abuse and had last used opiates less than a year previously. *Id*. at 666-67.

Dr. Parker diagnosed the plaintiff with cannabis abuse (rule out cannabis dependence), rule out alcohol abuse, opioid dependence (in sustained early remission by self-report), and personality disorder NOS [not otherwise specified], *see id*. at 668, concluding:

> No evidence was uncovered to suggest [that the plaintiff] lacks the capacity to perform work-related activities at this time. Behavioral observations and the test results indicate the capacity to perform at the very least fairly simple and repetitive tasks. The [plaintiff] had evidenced in the past the capacity for new learning and was able to accurately comprehend and respond to instructions on tasks administered on immediate examination. Test results can be best explained by substance abuse history as opposed to psychological factors investigated.

*Id*.

By letter to the ALJ dated January 18, 2019, in which the plaintiff's prior counsel noted that the plaintiff's hearing was scheduled for February 5, 2019, he requested that the ALJ subpoena Dr. Parker to testify, representing that Dr. Parker's testimony was expected to establish that:

> [W]hen [Dr. Parker] wrote his report he lacked sufficient reliable information to rule out the impact of the [plaintiff]'s depression and PTSD as significant factors that contribute to [her] deficits in the non-exertional functional capabilities;
>
> [Dr. Parker] has an anti-claimant bias that likely motivated the opinions he expressed in his report denying the [plaintiff]'s severe mental impairments and attributing functional deficits to cannabis abuse and possibly also cannabis dependence and alcohol abuse.

*Id*. at 464-65.  The plaintiff's counsel added that, if the subpoena request was denied, the plaintiff objected to the inclusion of Dr. Parker's report in the record and asked that it be stricken, in which event she would have "a standing objection" to the consideration of any opinions of agency nonexamining consultants relying on the Parker report.  *Id*. at 465.

The ALJ denied the subpoena request and overruled the objection, explaining that she had "reviewed the arguments and request" and found "no sufficient basis to require Dr. Parker's appearance at a hearing or to exclude his report from the exhibit file." *Id*. at 11.  She found no severe substance abuse disorder, *see id*. at 14-15, but deemed Dr. Parker's opinion concerning the plaintiff's mental capacity to perform work-related activities persuasive and consistent with the evidence as a whole, *see id*. at 24.

The plaintiff contends that the ALJ (i) violated her due process rights when she denied her request to subpoena Dr. Parker without adequate explanation, a proposition for which she cites *Perales*, 402 U.S. at 402, and (ii) failed to "document careful consideration" of her subpoena request pursuant to the Social Security Administration, Hearings, Appeals, and Litigation Law Manual ("HALLEX") § I-2-5-78, 1992 WL 601841.  *See* Statement of Errors at 5-6.  She adds that, "[g]iven this court's past focus on the need for a reasonable explanation and the minimal,

5

conclusory explanation given in this case, remand is warranted." *Id*. at 9 (citing *Henderson v. Astrue*, No. 2:10-cv-122-GZS, 2011 WL 1130880, at *3 (D. Me. Mar. 25 2011) (rec. dec., *aff'd* Apr. 12, 2011); *Maldonado v. Astrue*, Civil No. 08-412-B-W, 2009 WL 1885057, at *5 (D. Me. June 30, 2009) (rec. dec., *aff'd* July 23, 2009); *Crosby v. Heckler*, 638 F. Supp. 383, 385-86 (D. Mass. 1985)).

As a threshold matter, as the commissioner contends, *see* Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 19) at 7-10, the plaintiff had no absolute right to cross-examine Dr. Parker. Rather, "[w]hen it is reasonably necessary for the full presentation of a case, an [ALJ] . . . *may*, on his or her own initiative or at the request a party, issue subpoenas for the appearance and testimony of witnesses and for the production of books, records, correspondence, papers, or other documents that are material to an issue at the hearing." 20 C.F.R. §§ 404.950(d)(1), 416.1450(d)(1) (emphasis added). *See also, e.g., Morin v. Apfel*, No. CIV. 98-415-P-C, 1999 WL 33117165, at *5 n.6 (D. Me. May 17, 1999) (rec. dec., *aff'd* Oct. 14, 1999), *aff'd* No. 99-2261, 2000 U.S. App. LEXIS 20899 (1st Cir. July 13, 2000) (for "both legal and practical reasons, the commissioner need only accede to a request to subpoena a reporting physician when reasonably necessary to the full development of evidence in the case").[2]

Sections 404.950 and 416.1450 impose no requirement that an ALJ articulate reasons for the denial of a subpoena request, *see* 20 C.F.R. §§ 404.950, 416.1450, and the plaintiff's citations to other authorities fall short of demonstrating that remand is required on the basis of an inadequate explanation in this case.

---

[2] In her statement of errors, the plaintiff asserted that six United States Circuit Courts of Appeals "have held at various times that there is a right to cross-examination in the context of a social security hearing." Statement of Errors at 9 n.4. However, she cited no First Circuit case for that proposition, *see id*., and, at oral argument, her counsel clarified that she did not contend that she had an absolute right to subpoena Dr. Parker. Rather, her counsel argued, the interests of justice required that she be afforded that opportunity in view of her allegations of bias.

The plaintiff cites *Perales* for the proposition that the ALJ violated her due process rights when she denied the subpoena request without adequate explanation. *See* Statement of Errors at 6 (noting that, in *Perales*, the Supreme Court held that the report of a licensed physician who has examined a claimant may constitute substantial evidence in support of an ALJ finding adverse to a claimant "when the claimant has not exercised his right to subpoena the reporting physician and thereby provide himself with the opportunity for cross-examination of the physician") (quoting *Perales*, 402 U.S. at 402). Yet, the quoted passage does not speak to the circumstances in which a subpoena must issue, much less the level of articulation required in denying such a request. Rather, as the Supreme Court recently observed, the cited passage "stands for the uncontroversial . . . proposition that a claimant is not denied due process if he declines to take advantage of the adequate procedures available to him[,]" *Carr v. Saul*, No. 19-1442, 2021 WL 1566608, at *6 n.6 (Apr. 22, 2021).

The plaintiff next contends that the ALJ violated HALLEX § I-2-5-78 when she failed to "document careful consideration" of the request to subpoena Dr. Parker. Statement of Errors at 9. The cited HALLEX provision states, in relevant part, that an "ALJ must carefully consider whether a cross-examination is required for a full presentation of the case[,]" HALLEX § I-2-5-78(B)(2) n.2, and, "[w]hether in the record or in writing, the ALJ will explain why the ALJ declined to issue a subpoena[,]" *id*. § I-2-5-78(D). However, even assuming *arguendo* that these separate HALLEX subsections fairly can be read to require that an ALJ "document careful consideration[,]" Statement of Errors at 9, the commissioner correctly observes that the HALLEX does not have the force of law, *see* Opposition at 10; *Justiniano v. Soc. Sec. Admin*, 876 F.3d 14, 29 (1st Cir. 2017) (HALLEX provisions are not binding on the Social Security Administration).

Nor are *Henderson*, *Maldonado,* and *Crosby* persuasive authority for the proposition that an inadequate explanation warrants remand on these facts. Each of those cases turned on an ALJ's failure to explain the derivation or omission of physical or mental limitations, in the absence of which the court could not discern whether the ALJ's RFC determination was supported by substantial evidence, requiring remand. *See Henderson*, 2011 WL 1130880, at *2-3; *Maldonado*, 2009 WL 1885057, at *5-6; *Crosby,* 638 F. Supp. at 385-86. In this case, by contrast, the ALJ exercised her discretion pursuant to Sections 404.950(d)(2) and 416.1450(d)(2) to deny the plaintiff's subpoena request.[3]

Remand, accordingly, is unwarranted based on this first point of error.

### B. Failure to Find that Migraine Headaches Equaled Listing 11.02

At Step 3, the ALJ noted that, although there was no listing "specific to the evaluation of migraine headaches[,]" she had considered whether the plaintiff's migraine headaches medically equaled a listing alone or in combination with another impairment, concluding that they did not. Record at 15. She explained that the evidence did not show that the plaintiff's migraine headaches, which she discussed in more detail later in her decision, were "of listing-level severity." *Id*. The plaintiff asserts that, in so finding, the ALJ "failed . . . to properly assess whether or not [her] severe migraines equaled medical listing 11.02(B) or (D) for dyscognitive seizures." Statement of Errors at 10. I find no harmful error.

---

[3] At oral argument, the plaintiff's counsel also contested the commissioner's assertion in his brief that Dr. Parker's testimony was not reasonably necessary to the full development of the record, *see* Opposition at 4-10, arguing that the alleged anti-claimant bias would have been case-determinative because it tainted the opinions of Drs. Stahl and Haskell, on which the ALJ relied. Yet, as the plaintiff's counsel recognized in so arguing, Dr. Knox's opinion predated the Parker report. *Compare* Record at 176-78 *with id*. at 663-69. In addition, Drs. Stahl and Haskell – and ultimately the ALJ – relied on other evidence of record in assessing her mental RFC, including the plaintiff's course of treatment and activities of daily living. *See id*. at 18-25, 201, 203, 205-07, 232-34, 236-38. I find no abuse of discretion in the ALJ's finding that the Parker testimony was not reasonably necessary to the full development of the record.

To meet Listing 11.02B or D, a claimant must have epilepsy "documented by a detailed description of a typical seizure and characterized by" either "[d]yscognitive seizures . . ., occurring at least once a week for at least 3 consecutive months . . . despite adherence to prescribed treatment" or "[d]yscognitive seizures . . . occurring at least once every 2 weeks for at least 3 consecutive months . . . despite adherence to prescribed treatment . . .; and a marked limitation" in either physical functioning, understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, or adapting or managing oneself. Listing 11.02B, D.

The plaintiff observes that Dr. Taplinger indicated that her migraine headaches had occurred at least once a week for at least three consecutive months despite adherence to prescribed treatment, satisfying the frequency criteria of Listing 11.02, and that an earlier record indicated that her use of propranolol reduced her headaches to about five per month, still within the listing criteria. *See* Statement of Errors at 11-12. She adds that (i) her headaches are "quite debilitating[,]" (ii) she experiences nausea and vomiting, and (iii) she must remove herself to a quiet, dark place and lie down. *Id*. at 11 (quoting Record at 655).

She cites Social Security Ruling (SSR) 19-4p for the proposition that, because she had a severe migraine headache impairment, the ALJ was obligated "to provide sufficient details and explanations concerning whether or not the condition equaled a listing." *Id*. at 11-12.

Finally, she contends that, in discussing the severity and duration of her headaches, the ALJ misconstrued the record, highlighting evidence that propranolol reduced the frequency of her headaches but neglecting to state that they continued to occur five times per month. *See id*. at 12. She adds that the ALJ erred in stating that, although the plaintiff testified at hearing that she had not begun Botox therapy yet, she told examiners on January 11, 2019, that the first round of Botox

9

had helped for two or three weeks. *See id.* In fact, she notes, she reported in the cited record that she had received *steroid injections* that helped for a short time while awaiting MaineCare approval of Botox injections. *See id.*; *compare* Record at 20 *with id.* at 143-45, 977. She contends that remand should be granted to allow a proper Step 3 assessment on the totality of the evidence, especially Dr. Taplinger's treatment notes and opinion, which were unseen by agency nonexamining consultants. *See* Statement of Errors at 12.

The commissioner does not contest that the ALJ erred in finding that the plaintiff made contradictory statements concerning the timing of her Botox injections. *See* Opposition at 22. However, as he points out, *see id.* at 21-22, the ALJ cited evidence that the plaintiff's migraine headaches occurred less frequently than five times a month, *see* Record at 20.

Regardless, as the commissioner persuasively argues, *see* Opposition at 20, the plaintiff falls short of demonstrating harmful error. Most notably, she fails to explain how the effects of her migraine headaches equaled those of "dyscognitive seizures," which are "characterized by alteration of consciousness without convulsions or loss of muscle control" during which "blank staring, change of facial expression, and automatisms (such as lip smacking, chewing or swallowing, or repetitive simple actions, such as gestures or verbal utterances) may occur." Listing 11.00H1b. This, alone, is fatal to her bid for remand on this basis. *See, e.g., Carlin v. Berryhill*, No. 2:17-cv-00175-DBH, 2018 WL 2079504, at *4-5 (D. Me. May 4, 2018) (rec. dec., *aff'd* May 22, 2018) (rebuffing claimant's bid for remand on the basis of an ALJ's cursory discussion at Step 3 when "the claimant failed to explain how the listing was equaled").

Finally, the plaintiff's reliance on SSR 19-4p is misplaced: that ruling took effect on August 26, 2019, *see* SSR 19-4p, 2019 WL 4169635, at *1, subsequent to the ALJ's issuance of the instant decision on February 27, 2019, *see* Record at 27.

Remand, accordingly, is unwarranted on the basis of this second point of error.

### C. Omission from RFC of Migraine Headache and Epilepsy Limitations

The plaintiff next contends that the ALJ failed to make any allowance in assessing her RFC for off-task behavior caused by her migraine headaches and epilepsy, an outcome-determinative error in view of the testimony of the vocational expert (VE) present at her hearing that absences of a day or more per month would not be tolerated by employers. *See* Statement of Errors at 12-13. I find no error.

In support of this point, the plaintiff relies primarily on the opinion of Dr. Taplinger that, consistent with her own testimony and reports to providers, her pain and related headache symptoms would constantly reach distracting levels that would significantly interfere with concentration and attention, and her epileptic seizures could cause loss of consciousness and trouble concentrating. *See* Statement of Errors at 12-13; Record at 1060, 1064 (Taplinger opinion); *see also, e.g.,* Record at 150, 153 (plaintiff's testimony), 656, 678 (plaintiff's reports to providers).

Yet, the ALJ deemed the Taplinger opinion "unpersuasive[,]" explaining that the degree of limitation he assessed was "not supported in [his] contemporaneous treatment records[,]" "appear[ed] to be based in large part on the [plaintiff]'s subjective allegations[,]" and was inconsistent with "normal neurological examinations, medical records indicating some medication compliance issues and improvement in migraines and seizures when taken consistently," the plaintiff's activities of daily living, agency nonexamining consultants' assessments, and Dr. Taplinger's own treatment record "indicating that the [plaintiff]'s possible epilepsy [wa]s well controlled." Record at 23 (citations omitted). She added that, although Dr. Taplinger was a neurologist, the plaintiff had seen him only twice prior to the issuance of his opinion. *See id*.

The plaintiff separately challenges the ALJ's rejection of the Taplinger opinion, arguing that the ALJ erred in discounting it as predicated on the plaintiff's subjective complaints when

11

"doctors are required to consider" the subjective complaints of patients, who "are the primary source of information about what they are experiencing[,]" and "the fact that Dr. Taplinger prescribed Botox injections is evidence that he believed [her] complaints of pain[,]" a proposition for which she cites *Ormon v. Astrue*, 497 F. App'x 81, 86 (1st Cir. 2012).

As the commissioner argues, *see* Opposition at 16-17, for several reasons, this is an insufficient showing on which to disturb the ALJ's weighing of the Taplinger opinion. First, the plaintiff "does not engage with the majority of the[] reasons" the ALJ articulated for deeming the opinion unpersuasive, "arguing only that it was improper for the ALJ to discount the opinion to the extent it was based on subjective complaints." *Id*. at 17. Second, and in any event, when, as here, a claimant either has not challenged, or unsuccessfully challenged, an ALJ's discounting of her subjective statements, a treating source's reliance on such statements is "a valid reason to assign [the treating source's opinion] less weight." *M. Jeanie D. v. Saul*, No. 2:19-cv-00193-GZS, 2020 WL 1672784, at *5 (D. Me. Apr. 6, 2020) (rec. dec., *aff'd* June 4, 2020).

Third, and finally, *Ormon* does not compel a different result: in that case, "the record [wa]s not devoid of objective medical findings supporting [the treating source's] RFC assessment nor did [the treating source] rely solely on claimant's subjective complaints." *Ormon*, 497 F. App'x at 85.

Remand, accordingly, is unwarranted on the basis of this third point of error.

### D.  Handling of Opinion Evidence

The plaintiff next seeks remand on the ground that the ALJ's mental RFC determination is unsupported by substantial evidence because she (i) exceeded her lay competence in interpreting medical evidence unseen by the experts whose opinions she credited and (ii) failed to credit the opinions of treating sources Dr. Taplinger and LCPC-C Labbe. *See* Statement of Errors at 13-16. She also generally argues that the Taplinger and Labbe opinions should have been credited over

the "stale opinions" of the agency nonexamining consultants because they were more recent in time, based on treatment relationships, and supported by and consistent with each other's treatment notes. *See id*. at 16. Again, I find no error.

On the first point, as the commissioner notes, *see* Opposition at 11, this court has held that an ALJ is qualified to assess whether evidence unseen by agency nonexamining consultants undermines reliance on their opinions, *see, e.g., Charles T. C. v. Saul*, No. 1:19-cv-00564-NT, 2020 WL 5370551, at *5 (D. Me. Sept. 7, 2020) (rec. dec., *aff'd* Sept. 28, 2020) (ALJ "did not impermissibly construe raw medical evidence in concluding that evidence unseen by [agency nonexamining consultants] did not call into question their conclusions").

On the second point, the ALJ supportably discounted the Taplinger opinion for the reasons discussed above, and I find no fault with her handling of Labbe opinion. LCPC-C Labbe indicated that the plaintiff's major depressive disorder and PTSD caused a number of marked and extreme mental functional limitations in the ability to understand, remember, or apply information, interact with others, concentrate, persist, or maintain pace, and adapt or manage herself. *See* Record at 1028, 1032-35.

The ALJ deemed the Labbe opinion "unpersuasive[,]" explaining that the degree of limitation was "not supported by the minimal symptoms noted" in LCPC-C Labbe's treatment records and was inconsistent with the evidence as a whole, which showed, *inter alia*, that the plaintiff had "typically been alert, oriented, cooperative, pleasant, calm, fluent, rational, linear, and goal directed with good eye contact, normal behavior, and appropriate or normal mood and affect with intact memory, [and] intact concentration[.]" *Id*. at 23-24. She further deemed the Labbe opinion "inconsistent with the lack of referral for more intensive mental health treatment since the

13

alleged onset date, the activities of daily living cited above," and the opinions of agency nonexamining psychological consultants. *Id*. at 24.

The plaintiff complains that the ALJ "cherry-picked evidence of normal mental presentation from throughout the record" and that LCPC-C Labbe's own notes documented that she "presented as agitated and depressed" and included "objective evidence of functionally limiting distress and depression." Statement of Errors at 16 (citing Record at 817-20, 956, 1038). She denies that LCPC-C Labbe's opinion is inconsistent with his own contemporaneous treatment records. *See id*. (citing Record at 79-81).

As the commissioner observes, *see* Opposition at 13-14 & n.4, Dr. Stahl recognized that there was evidence that the plaintiff appeared anxious and depressed, *see* Record at 201, and the plaintiff relies in part on citation to a record postdating the ALJ's decision without making the requisite argument that its consideration in this context is appropriate, *see id*. at 2, 79-81; *Mills v. Apfel,* 244 F.3d 1, 5-6 (1st Cir. 2001) (there are two circumstances in which remand based on submission of evidence subsequent to the issuance of an ALJ's decision is appropriate: (i) when that evidence is new and material *and* a claimant demonstrates good cause for its belated submission and (ii) when, regardless of whether there is such good cause, the Appeals Council has given an "egregiously mistaken ground" for its action in refusing review in the face of such late-tendered evidence).

In any event, to the extent that LCPC-C Labbe's contemporaneous notes support his opinion, the plaintiff does not undermine the ALJ's findings that his opinion was inconsistent with (i) other evidence of record, (ii) a lack of referral for more intensive mental health treatment, (iii) the plaintiff's activities of daily living, and (iv) the opinions of agency nonexamining consultants. *See* Statement of Errors at 16; Record at 24.

The plaintiff' third point – that, for various reasons, the Taplinger and Labbe opinions merited more weight than those of the agency nonexamining consultants, *see* Statement of Errors at 16 – amounts to an unavailing invitation to the court to reweigh the evidence, *see, e.g., Rodriguez,* 647 F.2d at 222 ("The Secretary may (and, under his regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts."); *Malaney v. Berryhill*, No. 2:16-cv-00404-GZS, 2017 WL 2537226, at *2 (D. Me. June 11, 2017) (rec. dec., *aff'd* July 11, 2017), *aff'd*, No. 17-1889, 2019 WL 2222474 (1st Cir. May 15, 2019) ("The mere fact that a claimant can point to evidence of record supporting a different conclusion does not, in itself, warrant remand.").[4]

Remand, accordingly, is unwarranted on the basis of this final point of error.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum,*

---

[4] At oral argument, the plaintiff's counsel challenged the commissioner's assertion in his opposing brief that the opinion of agency nonexamining consultant Navjeet Singh, M.D., constituted substantial evidence in support of both the ALJ's Listings and RFC determinations, *see* Opposition at 15-16, 18-19; Record at 24-25, 234-36, arguing that Dr. Singh lacked the benefit of review of material later-submitted records that included the Taplinger notes and opinion and assessed no limitations related to the plaintiff's migraine headaches. Counsel for the commissioner countered that the plaintiff failed to raise this point in her statement of errors, thereby waiving it. *See, e.g.*, *Farrin v. Barnhart*, No. 05-144-P-H, 2006 WL 549376, at *5 (D. Me. Mar. 6, 2006) (rec. dec., *aff'd* Mar. 28, 2006) ("Counsel for the plaintiff in this case and the Social Security bar generally are hereby placed on notice that in the future, issues or claims not raised in the itemized statement of errors required by this court's Local Rule 16.3(a) will be considered waived and will not be addressed by this court.") (footnote omitted). Even assuming *arguendo* that the point is not waived, it is unavailing. First, as discussed above, the plaintiff's challenge to the ALJ's rejection of the Taplinger opinion falls short. Second, Dr. Singh attributed the environmental limitations he assessed at least in part to the plaintiff's migraine headaches. *See* Record at 236.

15

*within fourteen (14) days after being served with a copy thereof.   A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.*

Dated this 4th day of May, 2021.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge
